## In re SHEINMAN.

(District Court, E. D. Pennsylvania. July 30, 1926.)

No. 7805.

1. **Bankruptcy ⬤⇒346—Ordinary rules governing collection of taxes do not apply to trustee in bankruptcy (Bankruptcy Act, § 64a [Comp. St. § 9648]).**

Under Bankruptcy Act, § 64a (Comp. St. § 9648), ordinary rules governing collection of taxes, requiring payment under protest and suit for recovery, do not apply to trustee in bankruptcy.

2. **Bankruptcy ⬤⇒346.**

In view of Bankruptcy Act, § 64a, bankruptcy court, in matter of validity of tax, is not concluded by findings of taxing authorities (Comp. St. § 9648).

3. **Internal revenue ⬤⇒25—Showing that taxpayer's books did not reflect his income held insufficient to warrant assessment of income tax on basis of average profit of those engaged in like business (Revenue Act 1921, § 212 [Comp. St. § 6336⅛f]).**

Where revenue agent had access to taxpayer's records, and, after examining them 1½ days, left, saying that, due to volume of books, he would base his report for assessment of income tax on amount of sales according to sales record, *held*, there was insufficient showing that taxpayer's books did not reflect his income to warrant assessment, under Revenue Act 1921, § 212 (Comp. St. § 6336⅛f), on basis of average percentage of profit of those engaged in taxpayer's business, as determined by statistical department.

4. **Internal revenue ⬤⇒25.**

In determining taxable income, books of account are only evidential, and neither indispensable nor conclusive.

5. **Internal revenue ⬤⇒7(3).**

Courts, in absence of clear direction to contrary, construe revenue law as intended to reach actual income.

In Bankruptcy. In the matter of the bankruptcy of Max Sheinman. On certifi-

cate for review of order of referee, disallowing the claim of the United States for taxes. Order affirmed, and petition dismissed.

J. Howard Reber, of Philadelphia, Pa., for trustee.

George W. Coles, U. S. Atty., and Claude Olwen Lanciano, Asst. U. S. Atty., both of Philadelphia, Pa., for the United States.

THOMPSON, District Judge. The collector of internal revenue, on behalf of the United States, filed with the referee a proof of debt for income taxes under the Revenue Acts of 1918 and 1921 for the following amounts: For the taxable year 1919, $15,778.27; for 1920, $10,000.84; and for 1921, $1,647.94—a total of $27,427.05, with interest from January 17, 1924, at 1 per cent. per month, until paid. The trustee duly filed objections to the allowance of the claim, and after hearing, at which testimony was taken, the referee made an order disallowing the claim. The matter comes before the court upon a certificate for review of the referee's order.

The petition in bankruptcy was filed June 3, 1922, and adjudication entered August 10, 1922. The bankrupt had filed an income tax return for the year 1919, stating his net taxable income as $22,620.01, and the tax thereon $2,361.60, was paid by him. He had also filed income tax returns for the years 1920 and 1921, setting forth that his net taxable income was below the statutory requirements and no tax was due. The collector assessed the additional taxes on May 20, 1924, after the petition in bankruptcy was filed.

It appears from the testimony taken before the referee that the assessment was arrived at by the following method: The Statistical Department of the Bureau of Internal Revenue has found that the average net profits of those engaged in the business in which the bankrupt was engaged, based on their gross annual sales, was as follows: For the year 1919, 6.51 per cent.; for 1920, 6.51 per cent.; for 1921, 5.46 per cent.

The revenue agent, who computed the extra assessments, ascertained from the books of the bankrupt the amount of his gross sales for the respective years, and multiplied that by the average percentage applicable to such year, from the information derived from the figures of the Statistical Department. As the agent who made the assessment was no longer in the service, his figures were interpreted by an agent still in the service. The method of computation followed is claimed to be under the authority granted the Commissioner of Internal Revenue by section 212 (b) of the Revenue Act of 1918 (Comp. St. § 6336⅛f) and section 212 of the Revenue Act of 1921 (Comp. St. § 6336⅛f), providing as follows:

"The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income."

[1] Section 64 (a) of the Bankruptcy Act (Comp. St. § 9648), making taxes preferred claims, provides that a trustee shall be credited with the amounts paid therefor upon filing receipts of the proper public officers, and that "in case any question arises as to the amount or legality of any such tax the same shall be heard and determined by the court."

The effect of this provision is that, where a claim for income taxes is made against a bankrupt estate, the ordinary rules of procedure governing collection of taxes against individuals, such as appeal or claim for abatement, and payment of the tax under protest, with the only remedy against their enforced payment a suit instituted for their recovery, do not apply to a trustee in bankruptcy. The purpose of the Bankruptcy Act is that the bankrupt estate shall be promptly wound up, and ordinary procedure would delay its final settlement. In re Wenatchee Heights Orchard Corporation (D. C.) 212 F. 787; In re Anderson (D. C.) 275 F. 397; affirmed (C. C. A.) 279 F. 525; In re Fisher Corporation (D. C.) 229 F. 316. And any question which arises as to the amount or legality of taxes must be heard and determined by the court with a view to ascertaining the amount really due. In re Williams Oil Corporation (D. C.) 265 F. 401.

[2] The court is therefore not concluded by the findings of the taxing authorities. New Jersey v. Anderson, 203 U. S. 483, 27 S. Ct. 137, 51 L. Ed. 284. The question to be determined, then, is whether the evidence upon which the taxes were attempted to be assessed is such as to show a lawful imposition of taxes in the amount claimed or in any amount. The so-called regulations of the Commissioner providing for the average

percentage method are not regulations in the sense in which the term is ordinarily applied. They are not regulations adopted with the approval of the Secretary of the Treasury and published as such for the information of the taxpaying public. They are more in the nature of instructions to the officers of the revenue, for their guidance in determining or attempting to determine taxable income, where the amount cannot be determined from the books and records of the taxpayer or by other evidence.

[3] The district attorney contends that the method employed by the Revenue Bureau was justified under section 212 (b) of the Revenue Act of 1918 and section 212 of the Revenue Act of 1921, cited above. It is contended that the method of accounting employed by Sheinman did not clearly reflect his income, and that therefore the computation may be made upon any basis and in any manner which, in the opinion of the Commissioner, does clearly reflect the income. But I do not find that it is sufficiently shown in the case that the reason for not computing the income from the bankrupt's books is that they would not have clearly reflected his income. It is shown that the revenue agent who undertook to examine his books was, as found by the master, given access to all of the records of the bankrupt and remained about 1½ days, when he left. He stated before leaving that, inasmuch as there was such a volume of books there, he was going to base his report for assessment on the amount of sales, according to the sales records which were there. What information he could have obtained from the books, excepting the gross sales, was not shown at the hearing.

[4] The ascertainment of the amount of the net taxable income of the taxpayer is the ascertainment of a fact. Real facts, and not bookkeeping entries, give rise to income. Books of account are no more than evidential. They are neither indispensable nor conclusive. Doyle v. Mitchell, 247 U. S. 179, 38 S. Ct. 467, 62 L. Ed. 1054; Southern Pacific Railroad v. Muenter, 260 F. 837, 171 C. C. A. 563; Douglas v. Edwards (C. C. A.) 298 F. 229. Baldwin Locomotive Works v. McCoach, 221 F. 59, 136 C. C. A. 660.

[5] But this does not mean that the return of income should not be made in accordance with the taxpayer's books, for ordinarily the books are evidential in reflecting the facts. But income includes only the receipt of actual cash or its equivalent, and the courts, in the absence of a clear direction to the contrary, construe a revenue law in accordance with an intention to reach actual income. United States v. Schillinger, Fed. Cas. No. 16,228, 14 Blatch. 71.

The decisions under the Excise Tax Law and under the Income Tax Law are uniform to the effect that the government cannot base a claim for taxes on mere bookkeeping. Forty Fort Coal Company v. Kirkendall (D. C.) 233 F. 704; Industrial Trust Co. v. Walsh (D. C.) 222 F. 437; Baldwin Locomotive Works v. McCoach, supra.

The method employed by the Revenue Bureau in the instant case was derived from the book accounts of other persons, and does not show what the real income of the bankrupt was during the years in question. It is not as determinative of that fact as bookkeeping entries of the bankrupt himself would be, nor is it supported by any extrinsic facts produced in evidence. What was done was to find what other taxables had returned as their net incomes, or what the Bureau had found were the incomes of such taxables, and to take an average based on ratio of the return of income of such other persons to their gross sales, and then to find as a fact that such average represented the actual income of the bankrupt. This was not the ascertainment of a fact, but merely the exposition of a theory.

The Board of Tax Appeals has upheld this method in the Appeal of Daniel Welch, 2 B. T. A. 364. In that case, there were apparently withholding of books, intentional misleading entries in the books, and a failure to include the closing inventory upon audit, which were not explained upon the appeal. There were no extraordinary circumstances in the instant case. I doubt if evidence, based upon mere speculation or theory, such as was adopted here, would be admissible as evidence of the fact sought to be determined by the referee in any court.

My conclusion is that the referee was right in disallowing the claim, and his order, therefore, is affirmed, and the petition for review dismissed.